# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 00-2226

_____

| | | |
|---|---|---|
| Dominium Austin Partners, L.L.C., | * | |
| a Minnesota limited liability company; | * | |
| Dominium Iowa One, L.L.C., | * | |
| a Minnesota limited liability company; | * | |
| Dominium Kansas One, L.L.C., | * | |
| a Minnesota limited liability company; | * | |
| Dominium Wisconsin Five, L.L.C., | * | |
| a Minnesota limited liability company; | * | |
| Dominium Wisconsin Seven, L.L.C., | * | |
| a Minnesota limited liability company; | * | |
| Dominium Management Services, Inc., | * | |
| a Minnesota corporation; General | * | |
| Mills, Inc., a Delaware corporation; | * | Appeal from the United States |
| Minnesota Mining and Manufacturing | * | District Court for the |
| Company, a Delaware corporation; | * | District of Minnesota. |
| H B Fuller Company, a Minnesota | * | |
| corporation; Deluxe Corporation, | * | |
| a Minnesota corporation; KLT | * | |
| Investments, Inc., a Missouri | * | |
| corporation, | * | |
| | * | |
| Plaintiffs - Appellees, | * | |
| | * | |
| v. | * | |
| | * | |
| M. J. Emerson; Nancy Emerson; | * | |
| Richard Triplett; Susan Triplett, | * | |
| | * | |
| Defendants - Appellants. | * | |

_____

Submitted: March 16, 2001
Filed: May 1, 2001

_____

Before MURPHY, LAY, and BYE, Circuit Judges.

_____

MURPHY, Circuit Judge.

This diversity case involves disagreements between certain limited partners and other partnership entities who invested in low income housing. The case was brought by a number of companies, who are citizens of Minnesota, Delaware, and Missouri, to compel arbitration under the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, and to enjoin further proceedings in a California class action brought by defendants. Defendants, all residents of Iowa, then joined Minnesota resident Joel Lindquist as a class representative in their California action and moved the district court to dismiss this case for failure to join an indispensable party under Fed. R. Civ. P. 12(b)(7) , for lack of personal jurisdiction, and for improper venue. In the alternative, defendants moved for permission to arbitrate on behalf of the class alleged in California. The district court[1] denied the motion to dismiss, ordered defendants to arbitrate as individuals, and enjoined the California proceedings. They appeal, and we affirm.

I.

Appellants M.J. and Nancy Emerson and Richard and Susan Triplett are residents of Iowa who became limited partners by investing in some Operating Limited

_____

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

Partnerships (Operating Partnerships).[2]  Forty Operating Partnerships were formed between 1991 and 1996 under California law to own and operate low income housing projects through general partners Nationwide Housing Group, Inc. and Nationwide Development Group, L.P. (collectively NHG).  Each partnership adopted an agreement which provided that the limited partners would have voting rights in proportion to their investment, that the agreement could be amended by a 51% vote of the limited partners, that the replacement of a general partner required a unanimous vote of the limited partners, and that any dispute would be submitted to an arbitrator who would resolve the issue by applying California law.

NHG Institutional Fund, L.P. (the Institutional Fund) was a limited partner in twelve of the Operating Partnerships, including all but one of the partnerships in which appellants had invested.  The Institutional Fund invested a total of $50 million in these twelve Operating Partnerships, giving the Institutional Fund a controlling vote in each.  The Institutional Fund was comprised of appellees General Mills, Inc., Minnesota Mining and Manufacturing Company, H.B. Fuller Company, Deluxe Corporation, and KLT Investments, Inc. (the corporate parties), and five other companies not involved in this lawsuit.

The appellants allege that in early 1996, NHG informed the Institutional Fund that the Operating Partnerships and NHG were experiencing financial difficulties.  The corporate parties were concerned about their investments, and they allegedly took on an active role in the management of the partnerships by influencing NHG and restructuring the partnerships to the detriment of the individual limited partners.  Part of the restructuring involved the replacement of NHG as general partner without the unanimous vote of the limited partners.

---

[2]The Emersons invested in the limited partnerships known as Wisconsin V and Kansas I, and the Tripletts invested in Iowa I, Kansas I, and Wisconsin VII.

Appellee Dominium Management Services, Inc., acted as general partner for some or all of the Operating Partnerships in 1996, but the corporate parties eventually placed each Operating Partnership under the control of separate general partners. Appellees Dominium Iowa One, L.L.C., Dominium Kansas One, L.L.C., Dominium Wisconsin Five, L.L.C., and Dominium Wisconsin Seven, L.L.C., were all general partners in Operating Partnerships in which one or more of the appellants invested.

The appellants allege that the corporate parties continued to control the partnerships through the general partners, received information not available to the individual investors, made misrepresentations to the individual investors, and diluted their interests. In 1997, over 80% of the limited partners of each Operating Partnership adopted amendments to their partnership agreements. Richard and Susan Triplett voted for adoption of the amendments, but M.J. and Nancy Emerson voted against adoption. Among the provisions of the amended agreements was one that provided that all disputes arising out of the partnerships would be submitted to an arbitrator in Minnesota who would resolve the issues under Minnesota law. The appellants claim that the amendments would not have been adopted had the corporate parties not made certain misrepresentations to the individual limited partners.

In September 1999, appellants filed a class action in California state court against the corporate parties, NHG, and Dominium Management Services, Inc. Appellants also sued the general partners who replaced NHG as a class, naming Dominium Austin Partners, L.L.C. as class representative. Among the causes of action the complaint alleged were breach of fiduciary duty by the general partners, for allowing themselves to be controlled by the corporate parties, and breach of fiduciary duty by the corporate parties, for diluting the interests of the individual investors while acting in the capacity of de facto general partners. After the complaint was filed in California, appellees filed a petition with the American Arbitration Association, demanding arbitration. Appellants refused to arbitrate. Appellees then brought this diversity action, requesting that appellants be compelled to arbitrate their dispute in

Minnesota under the FAA, that appellants be precluded from arbitrating as a class, and that further proceedings in the California case be enjoined. After this federal action was filed, appellants joined Joel Lindquist as a class representative in their California lawsuit.

Lindquist is a Minnesota resident who had invested in the Dakota II limited partnership, and appellees petitioned the American Arbitration Association with a demand that he submit his claim to arbitration. He refused, and appellees sued in Minnesota District Court to compel him to arbitrate. After the appellate briefs in this case were submitted, the state court granted appellees' motion to compel Lindquist to submit to arbitration. It also enjoined him from arbitrating on behalf of a class and from bringing further proceedings related to this dispute in any forum other than binding arbitration in Minnesota. Lindquist's appeal from that decision is pending in the Minnesota Court of Appeals. Meanwhile, the California Superior Court granted appellees' motion to stay the California case. No class has yet been certified in that action.

In the appeal now before the court, appellants claim that the federal district court erred in dismissing this case and denying their request to arbitrate as a class. The district court held that Lindquist was not indispensable because he was not a named party at the time this action was filed. Since he was not indispensable, the court had diversity jurisdiction. Personal jurisdiction was not lacking because appellants had consented to personal jurisdiction by the agreement to arbitrate in Minnesota. Venue was proper in Minnesota because it was not inconvenient to the parties, and some of the conduct at issue had occurred in the state. Appellants contest all these points and also argue that the district court should have abstained in favor of the California court since the case there was filed first.

The FAA confers jurisdiction on federal courts over actions to compel arbitration only to the extent that the court would otherwise have jurisdiction. See 9 U.S.C. § 4;

-5-

Moses H. Cone Mem. Hosp. v. Mercury Constr. Co., 460 U.S. 1, 25 n.32 (1983). The asserted basis for subject matter jurisdiction in this case is diversity of citizenship, see 28 U.S.C. § 1332, which requires complete diversity among the parties. See Carden v. Arkoma Assocs., 494 U.S. 185, 187 (1990). Appellants argue that Lindquist is an indispensable party because he is necessary for a just resolution of this case. His joinder would deprive the court of diversity jurisdiction since he and some of the plaintiffs are citizens of Minnesota.

If subject matter jurisdiction exists at the time the action is commenced, it will generally not be divested by subsequent events. See Freeport-McMoRan, Inc. v. KN Energy, Inc., 498 U.S. 426, 428 (1991) (per curiam). The exception is where a nondiverse party must be joined because the party was indispensable at the time the complaint was filed. See Estate of Alvarez v. Donaldson Co., Inc., 213 F.3d 993, 994 (7th Cir. 2000); Whalen v. Carter, 954 F.2d 1087, 1096 (5th Cir. 1992).

The first step in determining whether a party is indispensable is to determine whether it is a necessary party. A party is necessary if:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a).

At the time the appellees filed this case, Lindquist was not a necessary party. Appellants do not assert that complete relief could not be afforded among the existing

parties in his absence, and Lindquist's interests would not have been prejudiced by adjudication of the claims. Appellees sought to compel no one but the appellants to arbitrate, and they did not seek to preclude anyone else from suing in another forum.[3] Lindquist's rights would have been unaffected by the resolution of this case. Moreover, at the time the federal lawsuit was filed, there was little risk of inconsistent judgments. Lindquist was not a named plaintiff in the California lawsuit, and there was no indication appellees planned to bring any action against him. Lindquist was therefore not a necessary or indispensable party, and the district court did not err by denying appellants' motion to dismiss under Fed. R. Civ. P. 12(b)(7).[4]

The appellants also argue that they are not subject to personal jurisdiction in Minnesota because their action does not fall within its long arm statute. Nonresidents are subject to personal jurisdiction to the extent that state law allows. See Fed. R. Civ. P. 4(e). Minn. Stat. § 543.19 has been interpreted to confer personal jurisdiction over nonresident defendants to the maximum extent allowed by due process. See Valspar Corp. v. Lukken Color Corp., 495 N.W.2d 408, 411 (Minn. 1992). Due process is satisfied when a defendant consents to personal jurisdiction by entering into a contract

---

[3]Appellants rely on Owens-Illinois, Inc. v. Meade, 186 F.3d 435, 438-39 (4th Cir. 1999), in which some of the plaintiffs in a state lawsuit were not named as defendants in a subsequent federal action because the filers wanted to obtain diversity jurisdiction (which would have been destroyed by including all of the state plaintiffs). The decision of the district court to dismiss the Owens-Illinois case was affirmed because the appellate court concluded that the omitted parties were necessary and indispensable. The factual background here is very different because Lindquist was not a party in the state case at the time this federal action was filed. He was only added as a plaintiff in the state case after this action commenced with diversity jurisdiction. Since the cases are factually distinct, we need not examine the question of whether Owens-Illinois is consistent with the federal policy favoring arbitration.

[4]Appellants also argue that there are other unidentified class members in the California action who are Minnesota residents and indispensable parties, but there is no showing that these unnamed individuals would be either necessary or indispensable.

that contains a valid forum selection clause. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 n.14 (1985); M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972). The partnership amendments adopted by each Operating Partnership in 1997 provided: "All arbitration hearings will be held in Minneapolis, Minnesota." Such a forum selection clause is enforceable unless it is invalid or enforcement would be unreasonable and unjust. See M/S Bremen, 407 U.S. at 15.

Appellants argue that they did not consent to be sued in Minnesota, even though their partnerships adopted an amendment naming the state in a forum selection clause. The Emersons say they voted against the amendments but even had they voted for them, they were unenforceable because they were contracts of adhesion. Although the Emersons voted against the amendments, they and the Tripletts agreed in their original contracts that the partnership agreements could be modified by a 51% vote of the limited partners. Because they agreed to the procedure by which the agreements were later modified, they cannot now argue that they did not consent to be bound by the modifications. Appellants have also offered no evidence that the partnership amendments were contracts of adhesion. Their bare assertion that the amendments were offered on a "take it or leave it" basis is not sufficient as a matter of law to establish adhesion. We conclude that appellants consented to personal jurisdiction in Minnesota, and the district court did not err when it found that it had personal jurisdiction over them.

Appellants argue that the forum is so inconvenient as to make the enforcement of the forum selection clause unjust. Since it may be assumed that parties consider the inconvenience of the forum at the time they enter a contract, it is "incumbent on the party seeking to escape his contract to show that [proceeding] in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." See id. at 18. As the district court noted, appellants are Iowa residents, closer to Minnesota than California. That attorneys, witnesses, and evidence might have to travel to Minnesota from California is not inconvenience of the

magnitude contemplated by M/S Bremen. Enforcement of the forum selection clause is not unjust under these circumstances.[5]

Decisions on possible abstention are reviewed for abuse of discretion. See Beavers v. Ark. State Bd. of Dental Exam'rs, 151 F.3d 838, 840 (8th Cir. 1998). A federal court should decline jurisdiction only under exceptional circumstances, giving consideration to the inconvenience of the forum, the order in which jurisdiction was obtained by the fora, and the desirability of avoiding piecemeal litigation. See Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 818-19 (1976). The balance of these factors should be weighted heavily in favor of deciding the case. See Moses H. Cone, 460 U.S. at 16. Here, none of the factors weighs in favor of abstention. There is little evidence that litigating in Minnesota is inconvenient to the parties. Although the California lawsuit was brought first, the real question is which case has progressed further. See id. at 22-23. Little has been done in the state case because it was stayed before a class was certified or the defendants filed an answer. Finally, the strong federal policy in favor of arbitration requires giving full effect to arbitration clauses, even where that might lead to piecemeal litigation. See id. at 20.

Congress demonstrated a strong national policy in favor of arbitration when it enacted the FAA. See Dobbins v. Hawk's Enters., 198 F.3d 715, 717 (8th Cir. 1999). "From this strong policy flows a 'broad principle of enforceability' of arbitration provisions." Id. (quoting Southland Corp. v. Keating, 465 U.S. 1, 11 (1983)). Arbitrability is reviewed de novo to the extent that it depends on contract interpretation,

---

[5]The appellants argue in a footnote that the district court abused its discretion in denying their motion to dismiss for improper venue. The California complaint alleges that a significant number of fraudulent acts occurred in Minnesota. Moreover, a forum selection clause may be viewed as a waiver of a defendant's right to object to venue. See Marra v. Papandreou, 216 F.3d 1119, 1123 (D.C. Cir. 2000); Northwestern Nat'l Ins. Co. v. Donovan, 916 F.2d 372, 378 (7th Cir.1990).

but the court's fact findings are reviewed for clear error.  See PCS Nitrogen Fertilizer, L.P. v. The Christy Refractories, L.L.C., 225 F.3d 974, 978 (8th Cir. 2000).

Appellants say they should not be compelled to submit their claim to arbitration because the arbitration clause was invalid and unenforceable.[6]  They claim that appellees convinced the individual limited partners to vote for the modification of the partnership agreements by making the fraudulent statement that they would "lose everything" if they did not.  An allegation of fraudulent inducement to adopt an arbitration clause would be a question for the court, see Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04 (1967), but appellants argue that they were fraudulently induced to adopt the entire package of amendments to the partnership agreement and such an issue is for the arbitrator.  See id.  Appellants also claim that appellees waived their right to arbitration because they did not submit a timely demand to arbitrate.  That too is an issue to be decided in arbitration.  See Stroh Container Co. v. Delphi Indus., Inc., 783 F.2d 743, 748 (8th Cir. 1986).

The appellants also argue that the arbitration clause cannot be enforced because some of the appellees are not parties to the same partnership agreements as appellants. For example, Dominium Austin Partners, L.L.C., Dominium Management Services, Inc., General Mills, Inc., Minnesota Mining and Manufacturing Co., Deluxe Corp., and KLT Investments are not parties to any of the partnership agreements signed by the appellants.  In their class action case, however, appellants made allegations which treat all these parties as though they were signatories to the agreements.  Appellants alleged

---

[6]The appellants also state in a footnote that the district court erred in enjoining the California action because it was barred from doing so by the Anti-Injunction Act, 28 U.S.C. § 2283.  They have not cited any authority to support that argument, however.

-10-

in California that all general partners[7] and the corporate parties owed them a fiduciary duty, and they repeatedly referred to the corporate parties as limited partners. See, e.g., Appendix at 389, 395, 396. The complaint also alleged jurisdiction and venue in California based on choice of law and forum selection clauses in the original partnership agreements.[8] See id. at 393-94. It would be inequitable to allow appellants to claim that these parties are liable for failure to perform under a contract and at the same time to deny that they are contractual parties in order to avoid enforcement of the arbitration clause. See Hughes Masonry Co., Inc. v. Greater Clark County Sch. Bldg. Corp., 659 F.2d 836, 838-39 (7th Cir. 1981); McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co., Inc., 741 F.2d 342, 344 (11th Cir. 1984).

Finally, we note that the goal of the FAA is to enforce the agreement of the parties, not to effect the most expeditious resolution of claims. See Baesler v. Cont'l Grain Co., 900 F.2d 1193, 1195 (8th Cir. 1990). As such, an arbitration agreement should be enforced "in accordance with its terms." Id. (quotation marks and citations omitted). Because appellants have not shown the arbitration clauses were invalid or unenforceable and because the partnership agreements make no provision for arbitration as a class, the district court did not err by compelling appellants to submit

[7]Appellees Dominium Iowa One, L.L.C., Dominium Kansas One, L.L.C., Dominium Wisconsin Five, L.L.C., and Dominium Wisconsin Seven, L.L.C. were not named individually in the California class action. Instead, most of the general partners were sued as a class, with Dominium Austin Partners, L.L.C. named as class representative. Each of these listed would have been included in the defendant class because each was a general partner in one of the partnerships in which one or more of the named plaintiffs had invested. See supra, note 2.

[8]Appellants make a brief argument that they should not be forced to arbitrate in Minnesota because they have made allegations in the California case related to the original agreements. Some of the defendants in the California case did not even exist until shortly before the amendments were adopted, however, and any claims against them could only arise under the amended agreements.

their claims to arbitration as individuals. <u>Cf.</u> <u>id.</u> (district court was without power to consolidate arbitration proceedings when arbitration agreements were silent on the issue).[9]

For these reasons, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[9]Appellants argue that the question of whether they should be allowed to arbitrate on behalf of a class should be decided under Minnesota or California law, rather than under the FAA, because of the contractual choice of law provisions. The construction of an agreement to arbitrate is governed by the FAA unless the agreement expressly provides that state law should govern. <u>See</u> <u>UHC Mgmt. Co., Inc. v. Computer Scis. Corp.</u>, 148 F.3d 992, 997 (8th Cir. 1998). Here, there is no such express provision in the arbitration clauses.