**NATIONAL BIODIESEL BOARD, Plaintiff,**

v.

**FUTUREFUEL CHEMICAL COMPANY, Defendant.**

**No. 4:09–cv–00208–JAJ.**

United States District Court, S.D. Iowa, Central Division.

Aug. 25, 2009.

---

**27.** *Id.*

Mark C. Feldmann, Beving Swanson & Forrest PC, Des Moines, IA, for Plaintiff.

Gary B. Rogers, Mark H. Allison, Dover Dixon Horne PLLC, Little Rock, AR, Brent B. Green, Duncan Green Brown & Langeness PC, Des Moines, IA, for Defendant.

## ORDER

JOHN A. JARVEY, District Judge.

This matter comes before the Court pursuant to Defendant FutureFuel Chemical Company's ("FFCC") May 26, 2009, motion to dismiss for lack of personal jurisdiction (Dkt. 7). Plaintiff, National Biodiesel Board ("NBB"), filed suit in Iowa District Court for Polk County on April 17, 2009. FFCC removed the case to this Court on May 21, 2009 (Dkt. 1). For the following reasons, FFCC's motion to dismiss is denied (Dkt. 7).

## I. FACTUAL BACKGROUND

FFCC is a biodiesel fuel manufacturer. NBB is a non-profit trade association that represents biodiesel manufacturers. Under the Clean Air Act, fuel manufacturers must register fuel with the Environmental Protection Agency ("EPA"). Under regulations issued by the EPA pursuant to the Clean Air Act, fuel manufacturers must submit health effects data in order to register a fuel with the EPA. NBB developed and submitted health effects data to the EPA for biodiesel fuel. This health effects data cost NBB approximately $2.2 million to develop. NBB makes this health effects data available to its members as part of their membership benefits. Non-members who wish to use this data are charged a fee that is designed to reimburse NBB for the costs of health effects data development. NBB's membership dues are calculated using a sliding scale based on the number of gallons of biodiesel produced by each fuel manufacturer member.

FFCC was a member of NBB. NBB has terminated FFCC's membership and has filed suit to recover unpaid membership dues. The Member Payment Agreement ("Agreement") between the two parties contains a forum selection clause which states:

> The parties agree that any legal or equitable action for claims, debts, or obligations arising out of, or to enforce the terms of, this Agreement may be brought by NBB in the United States District Court for the Southern District of Iowa or in the District Court of Iowa for Polk County, Iowa and that either court shall have personam jurisdiction over the parties and venue of the action shall be appropriate in either court.
> (Agreement, page 5, section 18).

## II. PROCEDURAL BACKGROUND

On April 16, 2009, FFCC filed suit against NBB in Arkansas state court seeking to rescind the Agreement between the two parties. FFCC is alleging in the Arkansas case that the Agreement between FFCC and NBB is unconscionable and should be voided. FFCC served NBB in this case on April 17, 2009. NBB removed that action to the United States District Court for the Eastern District of Arkansas and filed an answer to FFCC's complaint. On May 15, 2009, the federal court in Arkansas set the case for trial on July 10, 2010.

NBB filed suit against FFCC in Iowa District Court for Polk County on April 17, 2009, seeking to collect payment from FFCC under the Agreement. On May 21, 2009, FFCC removed the case to this Court. On May 26, 2009, FFCC filed this motion to dismiss. FFCC has alleged that this case should be dismissed since (1) an action concerning this matter has already been filed in Arkansas; (2) FFCC does not have sufficient contacts with the State of Iowa to support assertion by this court of personal jurisdiction; (3) the enforcement of the forum selection clause is unreasonable due to unequal bargaining power between the parties; and (4) the forum selection clause of the Agreement conflicts with the federal Clean Air Act.

## III. STANDARD OF REVIEW

"To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction." *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003). The Supreme Court has stated that the "Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

Personal jurisdiction challenges ordinarily require a two-step analysis. First, the court "must consider whether the state in question would accept jurisdiction under the circumstances. Then [it] must determine whether that exercise of jurisdiction comports with due process restrictions." *Sondergard v. Miles, Inc.*, 985 F.2d 1389, 1392 (8th Cir.1993). In Iowa personal jurisdiction reaches to the fullest extent permitted by the Constitution. *State ex rel. Miller v. Grodzinsky*, 571 N.W.2d 1, 3 (Iowa 1997).

## IV. ANALYSIS

### A. Pending Action in Arkansas

FFCC first asks the court to dismiss or stay the case because of the prior lawsuit between the parties involving the same issues in Arkansas. When an action is pending in two different courts, the first-filed rule, stated as follows, generally ap-

plies: "[t]o conserve judicial resources and avoid conflicting rulings, the first-filed rule gives priority, for purposes of choosing among possible venues when parallel litigation has been instituted in separate courts, to the party who first establishes jurisdiction." *Northwest Airlines, Inc. v. American Airlines, Inc.*, 989 F.2d 1002, 1006 (8th Cir.1993). Because the Arkansas case was filed first—one day before this case—the first-filed rule would suggest it has priority.

However, the first-filed rule "is not intended to be rigid, mechanical, or inflexible," *Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119, 121 (8th Cir. 1985), and "will not be applied where a court finds 'compelling circumstances' supporting its abrogation." *Northwest Airlines*, 989 F.2d at 1006. Red flags that suggest compelling circumstances include a race to the courthouse to file suit in order to preempt suit in an undesired forum. *Id.* at 1007.

■ Here, FFCC was aware of the forum selection clause in the Agreement that designated either this court or the District Court of Iowa for Polk County as the court where NBB would bring suit in the event of a dispute over the Agreement. FFCC filed suit to void the Agreement in Arkansas on April 16, 2009. The next day, NBB was served and filed its own suit against FFCC in Iowa to attempt to recover damages under the Agreement. The separation of only a day between filing suits shows that there was a race to the courthouse. The fact that the filing in Arkansas occurred only one day before the filing in this case suggests that FFCC was attempting to start the litigation in Arkansas to avoid being subjected to the forum selection clause in the Agreement. These are compelling circumstances suggesting abrogation of the first-filed rule. The court will not dismiss or stay these proceedings.

### B. Sufficient Contacts to Support Personal Jurisdiction

FFCC claims that it does not have sufficient contacts with the State of Iowa to warrant this court's exercise of personal jurisdiction over FFCC. But NBB asserts that personal jurisdiction here rests on a traditional basis of jurisdiction—consent, effected by the forum selection clause in the Agreement. Therefore, regardless of FFCC's contacts with Iowa, the forum selection clause, if valid and enforceable, clearly gives this court personal jurisdiction over FFCC.

### C. Enforcement of the Forum Selection Clause

NBB argues that this court can exercise personal jurisdiction over FFCC because, by signing the Agreement containing the forum selection clause, FFCC consented to personal jurisdiction in this court for any claims arising out of the Agreement. It is clear that "parties to a contract may agree in advance to submit to the jurisdiction of a given court." *National Equipment Rental, Limited v. Szukhent*, 375 U.S. 311, 316, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964).

FFCC argues that the forum selection clause is unenforceable because (I) enforcement would be unreasonable because the parties had unequal bargaining power in negotiating the Agreement, and (ii) it conflicts with the federal Clean Air Act.

#### 1. FFCC's claim that enforcement would be unreasonable and unjust

■ FFCC argues that enforcement of the forum selection clause would be unreasonable and unjust because of the disparity of bargaining power between NBB and FFCC. Factors important in determining the reasonableness of a forum selection clause are "whether the clause was the result of an arm's-length transaction, the experience and sophistication of the parties involved in the negotiation, the com-

parative bargaining positions of the parties, and representation of the parties by legal counsel. *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 10, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972).

■ FFCC focuses only on the third factor—the comparative bargaining positions of the parties—presumably because all the other factors point toward the reasonableness of enforcing the forum selection clause. FFCC claims that at the time the agreement was negotiated, NBB was the only entity which had developed the health effects data necessary for FFCC to comply with EPA regulations. Moreover, says FFCC, the cost and time required to develop the health effects data made it impracticable for FFCC to develop the information on its own. Therefore, NBB was FFCC's only source for biodiesel health effects data, and FFCC's viability in the biodiesel manufacturing industry depended on its ability to obtain this data. FFCC claims this created a disparity in bargaining power between FFCC and NBB which makes enforcement of the forum selection clause unreasonable.

■ FFCC faces an uphill battle. Forum selection clauses are generally enforced and do not violate due process unless the objecting party can "clearly show that enforcement would be unreasonable and unjust, or that the clause [is] invalid for such reasons as fraud or overreaching." *The Bremen,* 407 U.S. at 15, 92 S.Ct. 1907. Such clauses are prima facie valid unless the resisting party can make a "strong showing that it should be set aside." *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 591, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991) (quoting *The Bremen,* 407 U.S. at 15, 92 S.Ct. 1907).

FFCC makes no such showing. It argues merely that NBB was in a better position than FFCC to bargain for the contract. Some advantage in bargaining power does not make a contract unconscionable. Even if the contract was not negotiable at all, this would not make it unconscionable. The assertion "that a contract was offered on a 'take it or leave it' basis is not sufficient as a matter of law to establish that a contract is one of adhesion." *Medicap Pharmacies Inc. v. Faidley,* 416 F.Supp.2d 678, 684–85 (S.D.Iowa 2006) (citing *Dominium Austin Partners, L.L.C. v. Emerson,* 248 F.3d 720, 726 (8th Cir.2001)). FFCC has not sufficiently shown that the bargaining power disparity was so great that enforcement of the forum selection clause would be unreasonable.

■ Further, even if the contract is one of adhesion, the term of the contract being invalidated must also be unconscionable. *Webb v. R. Rowland & Co.,* 800 F.2d 803, 807 (8th Cir.1986). FFCC's only argument in this regard[1] is that the forum selection clause will inconvenience FFCC. FFCC points to the fact that FFCC and its employees and witnesses are located in Arkansas, and that NBB and its employees are located in Missouri. But a forum selection clause cannot be set aside simply because a party is inconvenienced, unless the inconvenience is so severe that trying the case in the selected forum would deprive the party of its fair day in court. *M.B. Restaurants, Inc. v. CKE Restaurants, Inc.,* 183 F.3d 750, 752 (8th Cir. 1999). Moreover, even where the forum is remote—and here, it is not—the party claiming unfairness in enforcing the forum selection clause "should bear a heavy burden of proof." *The Bremen,* 407 U.S. at 17, 92 S.Ct. 1907. FFCC cannot meet this heavy burden of proof, as it makes no showing that its inconvenience would be so great that it would be deprived of its fair day in court.

---

**1.** Other than those relating to the Clean Air Act, discussed below.

The court finds enforcement of the forum selection clause to be reasonable.

## 2. The Clean Air Act

FFCC argues that the forum selection clause and the Agreement as a whole conflict with the federal Clean Air Act ("the Act"). Therefore, FFCC argues, the clause and the wider Agreement violate federal public policy and should not be enforced. This argument requires brief discussion of the EPA regulations issued under the Act.

The parties agree that Congressional intent in including the fuel registration provisions of the Act, as implemented by the EPA in various regulations, was to encourage the sharing of health effects testing costs among the various fuel manufacturers required to do the testing. The EPA in its regulations under the Act provided for reimbursement of testing costs for a submitter of health effects data from other fuel manufacturers that use the original submitter's data to register their own fuel. 40 C.F.R. § 79.56(c). The EPA also gave notice that it would ease the burden of the program by establishing a grouping system to permit manufacturers of similar fuels, on a voluntary basis, to pool their resources and efforts to satisfy the EPA's fuel registration requirements. 57 Fed. Reg. at 13182–83. The EPA further noted that implementation of this grouping system would require "the development of equitable arrangements for cost sharing." 57 Fed.Reg. at 13191.

FFCC argues that (I) this scheme does not allow NBB to restrict access to data or use access to data to raise funds for itself; (ii) the terms of the Agreement could result in fuel manufacturers potentially paying a greater amount to NBB than the costs that NBB spent to develop this data; and (iii) the Agreement improperly ties access to its health effects data to membership in NBB. Thus the Agreement is unconscionable because it violates public policy, concludes FFCC, so the forum selection clause should not be enforced.

■ However, nothing in the regulations prohibits the type of Agreement entered into between NBB and FFCC, and the regulations explicitly leave the responsibility for the development of cost sharing arrangements to the participating manufacturers. 40 C.F.R. 79.56(b)(3) ("[t]he organization and administration of group functions and the development of cost sharing arrangements are the responsibility of the participating manufacturers."). Moreover, participation in fuel groups is strictly voluntary, and any manufacturer can choose to fulfill the EPA's fuel registration requirements on an independent basis. 40 C.F.R. 79.56(a)(1); see also 57 Fed.Reg. 13182. Under these circumstances, it cannot be said that NBB's Agreement with FFCC—at least to the extent of the forum selection clause—conflicts with the Clean Air Act and violates public policy.

■ EPA regulations also provide for an arbitration process when there is a dispute about a fair method of cost-sharing or reimbursement for testing costs. 40 C.F.R. 79.56(c)(1). FFCC argues that the forum selection clause is directly contrary to this regulation providing for arbitration of cost-sharing disputes. However, it is clear from the face of the EPA regulation that the EPA arbitration process is to be employed only "if manufacturers are unable to agree on fair and equitable cost-sharing arrangements." 40 C.F.R. 79.56(b)(3). When FFCC signed the Agreement, it agreed on its terms—including the forum selection clause—as a fair and equitable cost-sharing arrangement for NBB's group data testing costs. Therefore, the EPA regulation providing for arbitration does not conflict with the forum selection clause.

### V. CONCLUSION

The court finds the forum selection clause valid. It clearly establishes personal jurisdiction in this court over FFCC. The court further finds that FFCC has not demonstrated sufficient inequality in bargaining power to render enforcement of the forum selection clause unreasonable. The court also declines to dismiss or stay this case pending the outcome of the litigation in Arkansas.

Upon the foregoing,

**IT IS ORDERED** that defendant FFCC's motion to dismiss for lack of personal jurisdiction (Dkt. 7) is denied.